# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

**MISSISSIPPI POLYMERS, INC.**                                             **PLAINTIFF**

**V.**                                                                                                             **CASE NO. 1:07CV160**

**VELSICOL CHEMICAL CORPORATION**                              **DEFENDANT**

## MEMORANDUM OPINION

This cause comes before the court on the motion [83] of defendant, Velsicol Chemical Corporation ("Velsicol"), seeking summary judgment.

### Facts

Plaintiff, Mississippi Polymers, Inc. ("MPI") previously known as Intex, manufactures pliable PVC film. Since 2001, defendant Velsicol has supplied polymeric plasticizers for use in MPI's manufacturing process. Beginning on January 1, 2001 the parties operated under a series of yearly contracts. The last of those contracts was scheduled to expire on December 31, 2005. At the end of the one year terms either party could terminate the Agreement with ninety days notice of their intent to do so. The contracts included a number of terms and conditions including a disclaimer of all implied warranties specifically mentioning the implied warranty of fitness for a particular purpose and a provision limiting recovery to the purchase price of the plasticizers. On September 23, 2005, MPI gave the required ninety days notice that they would be terminating the contract at the end of its term.

During 2005 MPI found a less expensive polymeric plasticizer, BASF 654, which it considered to be as good or better than the material supplied by Velsicol. MPI began to use BASF 654 in violation of the exclusivity clause of its contract with Velsicol. In resolving that

issue an agreement between the parties was reached in November 2005. On November 9, 2005, MPI offered Velsicol the opportunity to keep some of their business if Velsicol satisfactorily resolved the plasticizer weight loss issue by June 1, 2006; eliminated the eight percent efficiency differential by March 1, 2006 or adjusted the price accordingly if the efficiency differential could not be eliminated; developed a new polymeric plasticizer that met or exceeded all the criteria of the cheaper BASF plasticizer available at a significantly lesser cost; and submitted in writing that Velsicol considered all contractual issues resolved and would not file suit for breach of contract. On November 23, 2005, Velsicol accepted the terms offered by MPI.

After the parties agreed to the new terms, several meetings were held in relation to the technical aspects of the production of an experimental plasticizer. MPI began to test these experimental plasticizers in May 2006. By June 2006, MPI was running plant trials of a plasticizer known as XP-8040. After passing all MPI's tests, XP-8040 was placed on the approved product list. On September 14, 2006 MPI placed its first bulk order for XP-8040. That order was delivered on September 25, 2006. Subsequent orders were placed in October, November, and January. Upon arrival each order was inspected and put through quality control procedures. The XP-8040 was then used interchangeably with BASF 654. There were no apparent problems with either product.

However, a problem developed. MPI's customers complained that some film had printability problems. It was discovered that all the problem film contained XP-8040. Eventually, MPI determined that one of XP-8040's components was causing component parts to migrate to the surface of the film. As a result of this migration and the subsequent printability problems, MPI suffered a loss of $872,460.45. MPI then filed the instant suit.

Velsicol seeks summary judgment on two grounds that: (1) they did not breach the

contract because MPI inspected and accepted the product which met all specifications and came with no warranty of fitness for a particular purposes; and, (2) even if the contract was breached MPI's right to recovery is limited to the purchase price of the XP-8040.

Standard of Review

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In reviewing the evidence, this Court must draw all reasonable inferences in favor of the nonmoving party, and avoid credibility determinations and weighing of the evidence. *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000). In so doing, the Court must disregard all evidence favorable to the moving party that the jury is not required to believe. *Reeves*, 530 U.S. at 151, 120 S.Ct. at 2110.

Analysis

Federal jurisdiction in this case is based on diversity of citizenship. Courts sitting with diversity jurisdiction apply state substantive law. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). Both parties and the court agree Mississippi law applies to this matter.

To prove breach of contract under Mississippi law a plaintiff must show that: (1) there is a valid and binding contract; (2) the defendant has breached that contract; and, (3) the plaintiff has suffered monetary damage because of the breach. *Warwick v. Matheney*, 603 So. 2d 330, 336 (Miss. 1992) (internal citations omitted).

There is no dispute that a valid contract exists. Velsicol claims that it did not breach the contract in question. In making this argument, Velsicol puts forth that the contract required them to develop and manufacture a polymeric plasticizer within specifications laid out by MPI. Since this task was performed and they offered no warranty of fitness for a particular purpose, Velsicol considered its obligations under the contract complete even though the product they sold did not perform as a component part of the film manufactured by MPI.

MPI interprets the contract as requiring Velsicol to supply a component material equal or superior to the BASF plasticizer they had begun to use. They further contend that the contract includes an implied warranty of fitness for a particular purpose. XP-8040 failed to properly work as a component of film as opposed to BASF 654 which worked without issue. MPI contends this failure to perform the necessary function of a successful film component is a breach of the contract.

The question before this court is what constitutes the contract between the parties. There is no question that a detailed contract existed prior to January 1, 2006. At the time the transactions in question occurred, the parties did not have a detailed contract. However, contracts do not have to be detailed. The most basic proposition in the law of contracts is that offer and acceptance constituting bargained for exchange creates a contract.

On November 9, 2005, MPI made an offer to Velsicol. Two weeks later Velsicol accepted that offer. The terms of the contract are those proposed by MPI. In pertinent part those terms require Velsicol to "[d]evelop a new polymeric plasticizer that meets or exceeds all the criteria of 654, (efficiency, adhesive, compatibility, processability, etc.) at a significantly lesser cost to secure additional volumes."

The terms of the contract make no mention of the implied warranty of fitness for a

particular purpose. Mississippi allows the contractual waiver of this implied warranty. *See* MISS. CODE ANN. §§ 75-2-314, 75-2-315, 75-2-315.1, 75-2-317. However, each of those sections require an express disclaimer. The contract in question does not include an express disclaimer. Velsicol relies on its previous contracts with MPI and on the terms and conditions included on the back of its invoices to find the disclaimer of the implied warranty of fitness for a particular purpose.

The prior contracts do not affect the current contract. It is undisputed that MPI was unwilling to proceed under the old arrangement. In an attempt to continue the business relationship, Velsicol accepted new contractual terms. Those terms control the issue at hand. The prior terms are irrelevant to these matters.

Finally, Velsicol relies on the terms and conditions attached to the invoices for the XP-8040. These terms and conditions do expressly disclaim the relevant implied warranties.[1] However, submitting invoices with terms not contemplated by the contract is ineffective in making those new terms binding. "Both historically and under the Code, the time for determining the terms of the contract is when the bargain is struck . . . [t]herefore, unless the disclaimers are disclosed prior to the agreement and agreed upon . . . they are not binding." *Van Den Broeke v. Bellanca Aircraft Corp.*, 576 F.2d 582, 583 (5th Cir. 1978) (applying Mississippi law).

---

[1] The terms and conditions also state Illinois law applies to the instant contract. Federal jurisdiction in this case is based on diversity of citizenship. This court is thus bound to apply Mississippi's rules regarding conflict of laws. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938)). Mississippi has adopted a "general rule . . . that courts will give effect to an express agreement that the laws of a specified jurisdiction shall govern, particularly where some material element of the contract has a real relation to, or connection with, such jurisdiction." Miller v. Fannin, 481 So. 2d 261, 262 (Miss. 1985). However, Velsicol does not argue that Illinois law should apply. Based on the terms of the contract at the time the bargain was struck, the court agrees that Mississippi law applies. However, the court finds it interesting that Velsicol only attempts to incorporate the terms and conditions that expressly make their case.

Based on the terms of the contract in question, Velsicol's motion for summary judgment fails. There is a question of material fact as to whether XP-8040 met or exceeded all the criteria of BASF 654. XP-8040 did not work as a component part of film. BASF 654 did work. There is evidence submitted to the court that XP-8040 met all the testing criteria imposed by MPI. Perhaps meeting all the testing criteria is enough to show XP-8040 was properly developed and delivered to MPI. However, there is also evidence that XP-8040 failed to meet all the criteria as it failed to perform its essential function. This creates a jury question as to whether XP-8040 met all the required criteria. Failure to meet these criteria would constitute a breach of contract and allow MPI to recover.

Additionally, even if a jury found that XP-8040 met all the required criteria, they could still find for MPI under the theory of implied warranty for a particular purpose. There is evidence before the court showing Velsicol knew the purpose for which XP-8040 was being purchased. XP-8040 did not work for that purpose and thus a jury could find Velsicol liable for that failure.

Velsicol's motion for summary judgment as to its breach of the contract is denied.

Velsicol next seeks summary judgement limiting MPI's recovery to the initial purchase price. In making this argument Velsicol relies on language contained on the back of their invoices. That language limits MPI's right to recovery.

The parties could have contracted to limit MPI's right to recovery. *See* MISS. CODE ANN. § 75-2-719. However, they did not contract to limit remedies in the initial agreement. Instead, Velsicol claims MPI accepted the limitation of remedies when they accepted the XP-8040 which came with an invoice containing terms and conditions limiting remedies. As discussed above the time for determining the terms of a bargain is when that bargain is struck. Here, Velsicol relies

on terms not introduced until after the formation of the contract. These terms are not binding. As such MPI's remedies are not limited to the purchase price of the XP-8040.

Velsicol's motion for summary judgment as to the limitation of remedies is denied.

## Conclusion

MPI and Velsicol entered into a contract with extremely limited terms. Velsicol now wishes to incorporate broader terms previously used by the parties into that contract. However, Mississippi law is clear that parties must live with the terms of the bargain they have struck.

Based on the above reasoning Velsicol's motion for summary judgment is DENIED.

This the 2nd day of December, 2008.

                                            **/s/ MICHAEL P. MILLS**
                                            **CHIEF JUDGE**
                                            **UNITED STATES DISTRICT COURT**
                                            **NORTHERN DISTRICT OF MISSISSIPPI**